09 CV 2364

WILENTZ, GOLDMAN & SPITZER P.A.
90 Woodbridge Center Drive
P.O. Box 10
Woodbridge, NJ 07095
732-636-8000
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

RECEIVE
MAR 1 3 2009
U.S.D.C. S.D. N.Y.
CASHIERS

```
------------------------------------------------X
                                                :
PHILIP POLITZINER AND GLENNIS                   :
POLITZINER,                                     :
                                                :
                    Plaintiffs,                 :
v.                                              :
                                                :          COMPLAINT
CRP/EXTELL PARCEL I, L.P.,                       :
                                                :
                                                :
                    Defendant.                  :
                                                :
------------------------------------------------X
```

Plaintiffs, Philip Politziner and Glennis Politziner ("Plaintiffs" or "Purchasers"),

by and through their attorneys, Wilentz, Goldman & Spitzer P.A., for their Complaint against

Defendant CRP/Extell Parcel I, L.P. ("Defendant" or "Developer"), allege as follows:

### SUMMARY OF THE COMPLAINT

1.      This is a civil action pursuant to the Interstate Land Sales Full Disclosure Act, as

amended, Public Law 90-448, Title XIV, 15 U.S.C. §1701 et seq., Public Law 96-153

("ILSFDA" or "The Act"), including without limitation under the provisions of 15 U.S.C. §§

1703, 1709 and 1719 of The Act and the regulations promulgated thereto, 24 C.F.R. 1710.1, et

seq. (1991) ("Regulations"),[123] the New Jersey Real Estate Full Disclosure Act, N.J.S.A. 45:15-16.27, et seq. and the NY Gen Bus L § 349 to rescind an agreement to purchase a condominium unit within the condominium property known as The Rushmore (the "Condominium")[4], located in New York, New York, and to recover the purchase deposit tendered to Defendant.

2.    On March 16, 2007, Plaintiffs entered into an Option Agreement (the "Purchase Agreement") with Defendant to purchase Unit Number 11B within the Condominium (the "Unit") for $3,550,000.00.  Pursuant to the Purchase Agreement, Plaintiff paid Defendant a deposit of $532,500.00, which is fifteen percent (15%) of the purchase price of the Unit (the "Deposit").

3.    The Plaintiffs have a cause of action under 15 U.S.C. § 1703(a)(1) because the Developer, prior to the execution of the Purchase Agreement, failed to comply with the requirements of the Interstate Land Sales Full Disclosure Act as a result of:

a.    Defendant's failure to furnish a printed Property Report meeting the requirements of 15 U.S.C. § 1707 to the Purchasers in advance of the signing of the Purchase Agreement by the Purchasers;

---

[1] The Federal Interstate Land Sales Full Disclosure Act, enacted by Congress in 1968, was designed to promote full and fair disclosures by sellers of real property. 15 U.S.C. § 1701, et seq.  As such, The Act imposes certain duties on developers who utilize the mails and interstate commerce, and creates claims against those who breach such duties. 15 U.S.C. § 1709(a).

[2] The Act and related Regulations are collectively referred to herein as "Federal Laws."

[3] All references in this Complaint to The Act shall be and are inclusive of the Federal Interstate Land Sales Full Disclosure Act, i.e., 15 U.S.C. § 1701, et seq., and the regulations and guidelines promulgated by the Secretary of Housing and Urban Development in furtherance thereof, i.e., 24 C.F.R. §§ 1710.1 et. seq.

[4] Condominium or unit properties are "lots" within meaning of The Act.  Schatz v. Jockey Club Phase III, Ltd., 604 F. Supp. 537 (S.D. Fla. 1985).

#3147493 (152509.001)

b.  Defendant's omission of material facts required to be stated in the Property Report pursuant to 15 U.S.C. § 1704 through § 1703.

4.    The Plaintiffs have a cause of action under 15 U.S.C. §1703(b) and (c) because in an attempt to circumvent the intent of The Act and to obscure the Plaintiff's rights thereunder, the Developer failed to properly disclose the Plaintiff's rescission rights in the Purchase Agreement as required by 24 C.F.R. § 1710.209(f)(3).

5.    The Plaintiffs have a cause of action under 15 U.S.C. § 1703(d) because the Defendant is not delivering a deed to the Plaintiffs within 180 days from the date the Plaintiffs first signed the Purchase Agreement, and the Unit's legal description set forth in the Purchase Agreement was not in the form mandated by the provisions of The Act, which requires that the Unit description must be in a form acceptable for recording by the public official responsible for maintaining land records in the jurisdiction where the unit is located, thereby entitling the Plaintiffs to an immediate right of rescission

6.    The Plaintiffs have a cause of action under N.J.S.A. 45:15-16.27 et seq. because the Defendant offered the Unit to the Plaintiffs, who are New Jersey Residents, without complying with the registration requirements of the New Jersey Real Estate Full Disclosure Act.

7.    The Plaintiffs have a cause of action under NY Gen Bus L § 349 because the Defendant committed deceptive acts and practices in its violations of the Interstate Land Sales Full Disclosure Act.

#3147493 (152509.001)

8.    The Plaintiffs seek rescission of the Purchase Agreement and the return of the Deposit, as well as the recovery of their costs, attorney's fees, and other relief as more fully set forth herein.

## THE PARTIES

9.    Plaintiffs Phillip Politziner and Glennis Politziner have an address of 15 Point of Woods Drive, North Brunswick, New Jersey 08902.

10.    Upon information and belief, Defendant CRP/Extell Parcel I, L.P. has an office at c/o Extell Development Company, 800 Third Avenue, Fourth Floor, New York City, New York, 10022. The Defendant may be served with process by serving its registered agent or someone authorized to accept service at the same address.

## SUBJECT MATTER JURISDICTION

11.    Plaintiffs' cause of action arises under federal law, specifically, the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§1701 et seq. This Court has subject matter jurisdiction pursuant to 15 U.S.C. §1719 to rescind a sale and purchase agreement for real property located within this district.

12.    15 U.S.C. § 1719 provides in pertinent part:

> The district courts of the United States, the United States court of any territory, and the United States District Court for the District of Columbia shall have jurisdiction of offenses and violations under this chapter and under the rules and regulations prescribed by the Secretary pursuant thereto, and concurrent with State courts, of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter. Any such suit or action may be brought to enforce any liability or duty in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, and the process in such cases may be served in any other district of which the defendant is an inhabitant or where the defendant may be found.

- 4 -

## PERSONAL JURISDICTION

13.    Personal jurisdiction over Defendant is proper under §§ 301 and 302 of the State of New York's Civil Practice Law & Rules, Rule 4 of the Federal Rules of Civil Procedure and under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States of America.

## VENUE

14.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b) and (c), as, upon information and belief, (1) Defendant transacts substantial and continuous business within this district; (2) Defendant offered the contract at issue in this case within this district; (3) the parties executed the contract at issue in this case within this district; (4) the real property at issue in this case is located within this district and (5) the claims alleged in this complaint accrued within this district.

## STATEMENT OF FACTS

15.    The Defendant is the developer of the Condominium called The Rushmore (the "Condominium"), located at 80 Riverside Boulevard, New York City, New York 10069.

16.    The Defendant, in its campaign to sell the Unit in the Condominium to the Purchasers, has employed several instrumentalities of interstate commerce, including the United States Postal Service, electronic means of data and voice communication and non-governmental courier services.    Moreover, in its construction of the Condominium, the Developer has purchased goods and services which originated outside the State of New York and were transported to, and incorporated into, the Condominium, which is located in this district.

#3147493 (152509.001)

17.   On March 16, 2007, Plaintiffs and Defendant signed the Purchase Agreement, a copy of which is attached hereto as **Exhibit "A"** and the contents of which are incorporated by reference herein, to purchase Unit Number 11B at the Condominium (the "Unit") for $3,550,000.00.  Pursuant to the Purchase Agreement, Plaintiffs paid the Defendant a deposit of $532,500.00, which is ten (15%) percent of the purchase price of the Unit (the "Deposit").

18.   Closing on the Unit has not yet occurred. The Plaintiffs' closing was originally scheduled for February 2009, rescheduled for a date to be determined over the summer, and then again rescheduled by the Defendant for May 11, 2009.

19.   The following language is located on page 11 of the HUD Property Report for the Condominium that is on file with HUD:

> **NEITHER THE FLOOR PLANS NOR THE DECLARATION HAVE BEEN SUBMITTED TO THE RPAB. UNTIL THE FLOOR PLANS ARE FILED AND THE DECLARATION IS RECORDED, THE DESCRIPTION OF THE UNITS IS NOT LEGALLY ADEQUATE FOR THE CONVEYANCE OF THE RESIDENTIAL UNITS. THEREAFTER, EACH RESIDENTIAL UNIT WILL BE LEGALLY DESCRIBED BY REFERENCE TO ITS UNIT AND TAX LOT NUMBER AS SET FORTH IN THE RECORDED DECLARATION AND FILED FLOOR PLANS.**

20.   The Defendant failed to comply with The Act by its failure to furnish the Plaintiffs with a printed Property Report meeting the requirements set forth by § 1703(a)(1)(B), § 1705, and § 1707 of The Act.

21.   The Defendant failed to comply with The Act by its failure to furnish the Plaintiffs with a printed Property Report in advance of the signing of the Purchase Agreement as required under § 1703(a)(1)(B).[5]

---

[5] H.R. REP. 96-154, 1979 U.S.C.C.A.N. 2317, 2352

#3147493 (152509.001)

22.    The Defendant omitted material facts required to be stated in the Property Report under § 1703(a)(1)(C).

23.    The Defendant failed to comply with The Act by its failure to contain the rescission language pursuant to § 1703(c) and (d) on the signature page or the face of the Purchase Agreement, as required by 24 C.F.R. § 1710.209(f)(3)(ii).

24.    The Defendant failed to comply with The Act by its failing to comply with the contract requirements mandated by The Act in that the Purchase Agreement does not contain a legal description of the property in a form acceptable for recording, as required by § 1703(d), which is in contravention of the express requirements of The Act.

25.    The Defendant did not comply with additional sections of The Act and participated in activities proscribed by § 1703.

26.    The Defendant did not comply with N.J.S.A. 45:15-16.27 et seq. because it failed to satisfy the registration requirements of the New Jersey Real Estate Full Disclosure Act.

27.    The Defendant's failure to comply with the Interstate Land Sales Full Disclosure Act constitutes deceptive acts and practices in violation of NY Gen Bus L § 349.

28.    Based on the above breaches by Defendant, the Plaintiffs have a right to rescind the Purchase Agreement and receive a full refund of the Deposit. The Plaintiffs are not obligated to complete the purchase of the subject Unit and are entitled to the return of their deposit monies, among other remedies.

#3147493 (152509.001)

## FIRST CAUSE OF ACTION

### (Violation of the Interstate Land Sales Full Disclosure Act - 15 U.S.C. §1701(a)(1))

29.    Plaintiffs hereby incorporate, adopt and reallege by reference, as if set forth specifically herein, each and every allegation set forth in the foregoing Paragraphs of this Complaint.

30.    The Defendant did not comply with 15 U.S.C. § 1703(a)(1) of The Act, which makes it unlawful for a developer, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails, with respect to the sale or any lot not exempt under § 1703, to sell or lease any lot *"unless a printed Property Report, meeting the requirements of § 1707...has been furnished to the purchaser in advance of the signing of any contract or agreement by such purchaser or lessee."*[6] The Act further makes it unlawful to "sell or lease any lot *where any part of the statement of record or the Property Report contained an untrue statement of a material fact or omitted to state a material fact* required to be stated therein pursuant to § 1704 through 1707 of The Act or any regulations thereunder."[7] The Property Report furnished to the Plaintiffs in connection with the purchase of the Unit does not meet the requirements of § 1707, omits material information, and was not provided to the Plaintiff in advance of the signing of the Purchase Agreement.

31.    The Defendant is subject to the registration and requirements of The Act, as the Defendant did not avail itself to any exemption under § 1702 of The Act. Further, the Defendant, directly or indirectly, did make use of means or instruments of transportation or

---

[6] 15 U.S.C. § 1703(a)(1)(C)

[7] 15 U.S.C. § 1703(a)(1)(B)

communications in interstate commerce, or the mails, to sell a condominium unit to the Plaintiff, thereby requiring the Defendant to comply with the requirements set forth in § 1703(a)(1)(B) and (C).

32.    The Defendant violated § 1703(a)(1)(B) by failing to furnish the Plaintiffs with a Property Report meeting the requirements of § 1707, which requires that a Property Report contain the information required under § 1705(1)-(6) and (12), along with "other information as the Secretary may be rules or regulations require as being necessary or appropriate in the public interest for the protection of purchasers."[8]    Pursuant to § 1705(12) and § 1707(a), the implementing regulations set forth in 24 C.F.R. § 1710.100-310 (the "Regulations") also set forth specific information and guidelines required by The Act.

33.    The Property Report must not only contain a statement regarding the availability of roads and public utilities, including water, sewer, electricity, gas, and telephone service, it must also set forth the estimated starting and completion dates, given by month and year, for each utility, facility and amenity in a property.[9] Further, for roads, water, sewer, and electricity, the Property Report must set forth the current percentage of construction that is complete for each of these utilities.[10]

34.    The HUD Property Report given to the Plaintiff did not set forth an estimated starting or completion date, given by month and year, for the construction of roads, water, sewer, electricity, or telephone service, nor did the HUD Property Report list the current percentage of construction complete for each of these utilities.

---

[8] 15 U.S.C. § 1707(a)

[9] 24 C.F.R. § 1710.110(b)(3), § 1710.111(a)(ii)(B), § 1710.111(b)(iii)(B), § 1710.111(c)(2), and § 1710.111(d)(1)

[10] 24 C.F.R. § 1710.110(b)(3), § 1710.111(a)(ii)(B), § 1710.111(b)(iii)(B), § 1710.111(c)(2)

#3147493 (152509.001)

35. Due to the Defendant's failure to list the estimated start and completion dates, and the current percentage of construction complete, the HUD Property Report does not meet the requirements of § 1707.

36. The Defendant's delivery to Plaintiff of a HUD Property Report that does not meet the requirements of § 1707 constitutes a violation of § 1703(a)(1)(B).

37. The estimated start and completion dates, along with the current percentage of construction complete, are material facts required to be stated in the HUD Property Report by sections § 1704 through § 1707. By omitting this information from the HUD Property Report, the Defendant has violated § 1703(a)(1)(B).

38. The Defendant also violated § 1703(a)(1)(B) by failing to furnish the Plaintiffs with the HUD Property Report in advance of the signing of the Purchase Agreement. A HUD Property Report must be furnished to a purchaser far enough in advance for the purchaser to have a reasonable opportunity to review it. Distributing a Property Report at the outset of, or very early in the sale, lease, or offering process is sufficient to fulfill this requirement. [11] The Defendant failed to provide the HUD Property Report to the Plaintiffs early enough in the sales process as to give the Plaintiffs a reasonable opportunity to review it.

39. The Plaintiffs have a cause of action against the Defendant for its violations of § 1703(a) pursuant to § 1709(a).

40. The Defendant failed to comply with § 1703(a)(1)(B) and § 1703(a)(1)(C) and therefore the Plaintiffs are not required to complete the purchase of the Unit, and are entitled to rescind the Purchase Agreement, receive a refund of their Deposit, and to damages including,

---

[11] H.R. REP. 96-154, 1979 U.S.C.C.A.N. 2317, 2352

but not limited to, attorney fees and expenses for this action and cost incurred, and contribution from all who are liable in such manner and to such extent and to such further relief as provided under 15 U.S.C. § 1709.

## SECOND CAUSE OF ACTION

### (Violation of the Interstate Land Sales Full Disclosure Act - 15 U.S.C. §1703(d)(1))

41.   Plaintiffs hereby incorporate, adopt and reallege by reference, as if set forth specifically herein, each and every allegation set forth in the foregoing Paragraphs of this Complaint.

42.   The Act requires that any contract or agreement for the sale or lease of a condominium not exempt under §1702 may be revoked at the option of the purchaser or lessee for two years from the date of the signing of such contract or agreement if the contract or agreement does not provide:

    a.   A description of the unit which makes such unit clearly identifiable and which is in a form acceptable for recording by the appropriate public official responsible for maintaining land records in the jurisdiction in which the unit is located

    b.   That, in the event of a default or breach of the contract or agreement by the purchaser or lessee, the seller or lessor (or successor thereof) will provide the purchaser or lessee with written notice of such default or breach and of the opportunity, which shall be given such purchaser or lessee, to remedy such default or breach within twenty days after the date or the receipt of such notice; and

    c.   That, if the purchaser or lessee loses rights and interest in the lot as a result of a default or breach of the contract which occurs after the purchaser or lessee has paid 15 per centum of the purchase price of the lot, excluding any interest owed under the contract or agreement, the seller or lessor (or successor thereof) shall refund to such purchaser or lessee any amount which remains after subtracting (A) 15 per centum of

- 11 -

the purchase price of the unit, excluding any interest owed under the contract or agreement, or the amount of damages incurred by the seller or lessor (or successer thereof) as a result of such breach, whichever is greater, from (B) the amount paid by the purchaser or lessee with respect to the purchase price of the unit, excluding any interest paid under the contract or agreement.[12]

43.    The Act sets forth an exception to the above requirements, stating that they do not apply "to the sale of a unit, for which, within one hundred and eighty days after the signing of the sales contract, the purchaser receives a warranty deed."[13] The Plaintiffs did not receive a warranty deed within one hundred eighty (180) days of signing the Purchase Agreement, and the Defendant is thereby subject to the requirements set forth in § 1703(d).

44.    The Purchase Agreement does not state that the description of the Unit is in a form acceptable for recording by the public official responsible for maintaining land records in the jurisdiction where the unit is located. Further, the HUD Property Report prepared by the Defendant in connection with this Condominium states that "**THE DESCRIPTION OF THE UNITS IS NOT LEGALLY ADEQUATE FOR THE CONVEYANCE OF THE RESIDENTIAL UNITS.**"[14]

45.    The Defendant has violated 15 U.S.C. § 1703(d) by failing to set forth in the Purchase Agreement a description of the Unit that is in a form acceptable for recording by the appropriate public official responsible for maintaining land records in the jurisdiction where the Unit is located, failing to set forth the Plaintiffs' right to cure in the Purchase Agreement, and failing to include the fifteen percent (15%) limitation on damages in the Purchase Agreement.

---

[12] 15 U.S.C. § 1703(d)

[13] 15 U.S.C. § 1703(d)

[14] HUD Property Report, p. 11

- 12 -

Pursuant to § 1703(d), the Purchase Agreement may be revoked at the option of the Purchaser for two years from the date the Purchase Agreement was signed if these three requirements are met.[15]

46.   The Plaintiffs have a cause of action against the Defendant to enforce the rights set forth in § 1703(d) and (e) pursuant to § 1709(b).

47.   Pursuant to 15 U.S.C. § 1703(d) and (e), the Plaintiffs the Plaintiffs are not required to complete the purchase of the Unit, and are entitled to rescind the Purchase Agreement, receive a refund of their Deposit, and to damages including, but not limited to, attorney fees and expenses for this action and cost incurred, and contribution from all who are liable in such manner and to such extent and to such further relief as provided under 15 U.S.C. § 1709.

### THIRD CAUSE OF ACTION

### (Violation of the Interstate Land Sales Full Disclosure Act - 15 U.S.C. §1703(b)-(c))

48.   Plaintiffs hereby incorporate, adopt and reallege by reference, as if set forth specifically herein, each and every allegation set forth in the foregoing Paragraphs of this Complaint.

49.   The Defendant did not comply with 15 U.S.C. § 1703(b) and (c). § 1703(b) requires that:

> Any contract or agreement for the sale or lease of a lot not exempt under section 1702 of this title may be revoked at the option of the purchaser or lessee until midnight of the seventh day following the signing of such contract or agreement

---

[15] 15 U.S.C. § 1703(d)

#3147493 (152509.001)

or until such later time as may be required pursuant to applicable State laws, and such contract or agreement shall clearly provide this right.

50.   §1703(c) requires that

In the case of any contract or agreement for the sale or lease of a lot which a Property Report is required by this chapter and the Property Report has not been given to the purchaser or lessee in advance of his or her signing such contract or agreement, such contract or agreement may be revoked at the option of the purchaser or lessee within two years from the date of such signing, and such contract or agreement shall clearly provide this right.

51.   The Regulations set forth the required language that must be used in the purchase agreement for providing the purchaser with a seven day and two year right of rescission. Such language must appear "on the face or signature page above all signatures" of the purchase agreement.[16]

52.   The rescission language contained in the Purchase Agreement appears on page fourteen (14) of the Purchase Agreement, whereas the signature page is page fifteen (15) of the Purchase Agreement. Further, the rescission language does not appear on the face of the Purchase Agreement.

53.   Defendant failed  to provide the required rescission language on the signature page of the Purchase Agreement in an attempt to circumvent the requirements of The Act and obscure the Plaintiffs' statutory rights of rescission,  thereby failing to comply with 24 C.F.R 1710.209(f)(3)(i), thereby violating § 1703(b) and (c).

54.   The Plaintiffs have a cause of action against the Defendant to enforce the rights of rescission afforded by § 1703(b) and (c) pursuant to § 1709(b).

---

[16] 24 C.F.R. § 1710.209(f)(3)(i)

#3147493 (152509.001)

55.    Since the Defendant has violated § 1703(b) and (c), the Plaintiffs are not required to complete the purchase of the Unit, and are entitled to rescind the Purchase Agreement, receive a refund of their Deposit, and to damages including, but not limited to, attorney fees and expenses for this action and cost incurred, and contribution from all who are liable in such manner and to such extent and to such further relief as provided under 15 U.S.C. § 1709.

### FOURTH CAUSE OF ACTION

**(Violation of the New Jersey Real Estate Full Disclosure Act, N.J.S.A. 45:15-16.27 et seq.)**

56.    Plaintiffs hereby incorporate, adopt and reallege by reference, as if set forth specifically herein, each and every allegation set forth in the foregoing Paragraphs of this Complaint.

57.    The New Jersey Real Estate Full Disclosure Act ("NJREFDA") requires developers that are offering out-of-state subdivided land to New Jersey purchasers to comply with the registration requirements set forth in the NJREFDA.[17] Condominiums are subdivided lands in accordance to the NJREFDA.[18]

58.    The Plaintiffs are residents of New Jersey, and therefore the Defendant was obligated to register the Condominium pursuant to the NJREFDA before offering the Unit for sale to the Plaintiffs.

59.    The Defendant failed to make application to the New Jersey Real Estate Commission to register the Condominium under the NJREFDA and failed to have in effect a

---

[17] N.J.S.A. 45:15-16.30

[18] N.J.S.A. 45:15-16.27

- 15 -

registration under the NJREFDA at the time that it offered the Unit to the Plaintiffs and at the time the Plaintiffs signed the Purchase Agreement.

60.    Due to the Defendant's failure to register with the New Jersey Real Estate Commission in violation of the NJREFDA, the Plaintiffs are entitled to the remedies of rescission of the contract and refund of the Deposit[19], in addition to double the damages suffered, and court costs expended, including reasonable attorney's fees[20].

### FIFTH CAUSE OF ACTION

### (Violation of NY Gen Bus L § 349)

61.    Plaintiffs hereby incorporate, adopt and reallege by reference, as if set forth specifically herein, each and every allegation set forth in the foregoing Paragraphs of this Complaint.

62.    Defendant did not comply with disclosure requirements specifically mandated by the Interstate Land Sales Full Disclosure Act, as such, has engaged in deceptive acts or practices in the conduct of its business, trade, or commerce as prohibited by NY Gen Bus L. § 349.

63.    Pursuant to NY Gen Bus L §349(g), the Plaintiffs are entitled to recover their damages from the Defendant's deceptive acts and practices, as well as their attorney's fees.

### PRAYER FOR RELIEF

---

[19] N.J.S.A. 45:15-16.47(b)

[20] N.J.S.A. 45:15-16.47(a)

#3147493 (152509.001)

64.    Plaintiffs pray for judgment and declarations against the Defendant as follows:

(1)    Rescission of the Purchase Agreement and return of their Deposit monies of $532,500.00, plus accrued interest thereon;

(2)    that Plaintiffs be awarded their compensatory damages;

(3)    that Plaintiffs be awarded reasonable attorney's fees[21];

(4)    that Plaintiffs recover their costs of court;

(5)    that Plaintiffs be awarded pre and post judgment interest,

(6)    that Plaintiffs be awarded any other damages allowable by any applicable statute; and

(7)    that Plaintiffs recover such further relief to which they may be entitled.


WILENTZ, GOLDMAN & SPITZER P.A.
Attorneys for Plaintiffs, Philip Politziner and Glennis Politziner


By:_____
        ALAN WASSERMAN, ESQ.

Dated:  March 13, 2009

---

[21] Plaintiffs are entitled to an award of reasonable attorney's fees and costs pursuant to 15 U.S.C. 1709(c).

- 17 -

Exhibit A

**OPTION AGREEMENT**

CRP/Extell Parcel I, L.P.

Sponsor-Seller


TO

Philip Politziner
Glennis Politziner

Purchaser


UNIT NUMBER 11B


RESIDENTIAL SECTION

OF

RUSHMORE
80 RIVERSIDE BOULEVARD
NEW YORK, NEW YORK 10069

# TABLE OF CONTENTS

Page

1. The Plan ........................................................................................................................ 1
2. Definitions.................................................................................................................... 1
3. The Unit ....................................................................................................................... 1
4. Purchase Price ............................................................................................................. 2
5. Closing Of Title ........................................................................................................... 2
6. Delivery Of The Deed And Power Of Attorney ......................................................... 3
7. Fee Title ....................................................................................................................... 3
8. Closing Adjustments And Real Estate Taxes ............................................................. 4
9. Mortgage Tax Credit.................................................................................................... 4
10. Closing Costs ............................................................................................................... 5
11. Deposit ......................................................................................................................... 5
12. Binding Effect Of Declaration, By-Laws And Rules And Regulations ..................... 5
13. Agreement Subject To Mortgage................................................................................. 5
14. Purchaser's Representations ........................................................................................ 6
15. Default By Purchaser ................................................................................................... 6
16. Closing Contingent Upon Plan Being Declared Effective.......................................... 7
17. Sponsor's Inability To Convey The Unit ..................................................................... 8
18. Fixtures, Appliances And Personal Property .............................................................. 8
19. Acceptance Of Condition Of Property......................................................................... 8
20. Damage To The Unit .................................................................................................... 9
21. No Representations ..................................................................................................... 10
22. Prohibition Against Advertising And Selling ........................................................... 10
23. Broker ......................................................................................................................... 11
24. Agreement May Not Be Assigned ............................................................................. 11
25. Binding Effect ............................................................................................................ 11
26. Notices ........................................................................................................................ 11
27. Joint Purchasers ......................................................................................................... 12
28. Performance By And Liability Of Sponsor ............................................................... 12
29. Further Assurances..................................................................................................... 12
30. Agreement Not Contingent Upon Financing ............................................................. 12
31. Costs Of Enforcing And Defending Agreement ....................................................... 12
32. Severability ................................................................................................................ 12
33. Strict Compliance....................................................................................................... 13
34. Governing Law ........................................................................................................... 13
35. Waiver of Jury............................................................................................................ 13
36. Entire Agreement ....................................................................................................... 13
37. Certain References ...................................................................................................... 13
38. Captions ...................................................................................................................... 13
39. Rule of Construction .................................................................................................. 13
40. Successors and Assigns.............................................................................................. 13
41. No Oral Changes ........................................................................................................ 13
42. Counterpart Signatures............................................................................................... 14
43. Interstate Land Sales .................................................................................................. 14
44. Option ......................................................................................................................... 14

SSL-DOCS1 1717251v1

UNIT NUMBER(S) 11B

RESIDENTIAL SECTION

OF

RUSHMORE
80 RIVERSIDE BOULEVARD
NEW YORK, NEW YORK 10069

(to be executed in quintuplicate)

This option agreement (the "Agreement"), made as of the date on the signature page of the Agreement, between CRP/Extell Parcel I, L.P., a Delaware limited partnership, having an office at c/o Extell Development Company, 800 Third Avenue, Fourth Floor, New York, New York 10022 ("Sponsor"), and Philip Politziner and Glennis Politziner, having an address at ﹐           , North Brunswick, NJ 08902 ("Purchaser").

W I T N E S S E T H:

     1.    THE PLAN.  Purchaser acknowledges having received and read a copy of the Offering Plan for the Residential Section of the Rushmore and all amendments thereto, if any, filed with the Department of Law of the State of New York (hereinafter, collectively, referred to as the "Plan") at least three (3) days prior to Purchaser's signing this Agreement.  If Purchaser has not received and read the Plan and all amendments thereto at least three (3) full days prior to Purchaser's signing this Agreement, Purchaser shall have the right to rescind this Agreement within seven (7) days from the date of this Agreement. The Plan is incorporated herein by reference and made a part hereof with the same force and effect as if set forth at length. In the event of any inconsistency between the provisions of this Agreement and the Plan, the provisions of the Plan will govern and be binding except where such provisions were requested by Purchaser and agreed to by Sponsor.

     2.    DEFINITIONS.  Terms used herein which are also used in the Plan shall have the same meanings herein as therein unless the context otherwise requires.

     3.    THE UNIT.  Upon and subject to the terms and conditions set forth herein, Sponsor agrees to sell and convey, and Purchaser agrees to purchase, the unit ("Unit") to be designated as Unit 11B in the Plan, together with the 0.4370 percentage undivided interest in the General Common Elements of the Condominium appurtenant thereto.

4.    PURCHASE PRICE.

4.1    The purchase price for the Unit ("Purchase Price") is $3,550,000.00.

The Purchase Price is payable as follows:

(a)    $355,000.00 (the "Initial Deposit"), due upon Purchaser's signing and submitting this Agreement, by check (subject to collection), receipt of which is hereby acknowledged.

(b)    $177,500.00 (the "Additional Deposit"), by check payable no later than the earlier to occur of: (i) __9|16|07__ which is six (6) months after the date of the Agreement or (ii) fifteen (15) days after Sponsor presents an amendment declaring the Plan effective, but in no event later than the Closing, subject to collection.    The Initial Deposit and the Additional Deposit are hereinafter collectively referred to as the "Deposit."

(c)    $3,017,500.00, constituting the balance of the Purchase Price, payable on the delivery of the deed as hereinafter provided.

4.2    All checks shall represent United States currency and shall be drawn on or issued by a New York bank or trust company which is a member of The New York Clearing House Association, unless otherwise agreed to by Sponsor.  Checks for the Deposit (other than any portion of the Deposit paid at the Closing pursuant to the provisions of this Agreement) shall be made payable to "Stroock & Stroock & Lavan LLP, Escrow Agent."  Checks for the balance of the Purchase Price (including any portion of the Deposit paid at the Closing pursuant to the provisions of this Agreement) shall be made payable by good certified check of Purchaser or official bank check to the direct order of "CRP/Extell Parcel I, L.P." or such other party as Sponsor may designate upon not less than two (2) days prior notice.  If any check is returned for insufficient funds or any other reason, Sponsor at its option, may declare this Agreement void ab initio and of no further force and effect and may institute an action against Purchaser for the collection of the Deposit as liquidated damages or may declare a default by Purchaser under this Agreement which shall entitle Sponsor to exercise any of the remedies set forth in Article 15 hereof.

5.    CLOSING OF TITLE.

5.1    The closing of title shall be held at such place in the City and State of New York and on such date and hour as Sponsor may designate to Purchaser on notice served not less than thirty (30) days' prior to the scheduled date for closing.  If Sponsor consents to close at any other location as an accommodation to Purchaser, Purchaser shall pay to Sponsor's attorneys at closing an extra fee as set forth in the Plan.  Sponsor, from time to time, may adjourn the date and hour for closing on written notice to Purchaser.  In the event of such adjournment, a closing may be rescheduled by Sponsor upon written notice to Purchaser, which notice shall fix a new date, hour and place for the closing of title and will be given not less than two (2) business days prior to the new scheduled date and time for closing.  In the event this Agreement is executed after the First Closing, the closing of title shall occur thirty (30) days after the date of this Agreement.

2

5.2    The closing of title shall occur only after or concurrently with the compliance with the prerequisites as set forth under "Terms of Sale" in Part I of the Plan.

5.3    The term "Closing Date" or "closing of title" or words of similar import, whenever used herein, shall mean the date designated by Sponsor on which the deed to the Unit is delivered to Purchaser, or any adjourned date fixed by Sponsor pursuant to subsection 5.1 hereof.

6.    DELIVERY OF THE DEED AND POWER OF ATTORNEY.

6.1    At the closing of title, Sponsor shall deliver to Purchaser a bargain and sale deed with covenant against grantor's acts conveying title to the Unit to Purchaser. The deed shall be prepared by Sponsor in substantially the form set forth in Part II of the Plan and shall be executed and acknowledged by Sponsor in form for recording. Purchaser shall pay all New York State and New York City real property transfer taxes, and Sponsor and Purchaser shall duly execute a New York City Real Property Transfer Tax return and any other forms then required by Law, all of which shall be prepared by Sponsor.

6.2    At the closing of title and simultaneously with the delivery of the deed conveying the Unit to Purchaser, Purchaser shall execute and acknowledge a power of attorney to the Condominium Board, the Residential Board and Sponsor substantially in the form set forth in Part II of the Plan.

6.3    The deed and power of attorney to the Condominium Board, Residential Board and Sponsor shall be delivered to the representative of the title company insuring Purchaser's title (or, if no such representative is present, then to Sponsor's attorney) for recording in the City Register's Office, which recording shall be at Purchaser's expense. After being recorded, the deed shall be returned to Purchaser and the power of attorney shall be sent to the Managing Agent.

6.4    Sponsor shall deliver to Purchaser a certification stating that Sponsor is not a foreign person in the form then required by the Code Withholding Section and (ii) each party shall execute, acknowledge and deliver to the other party such instruments, and take such other actions, as such other party may reasonably request in order to comply with IRS §6045(e), as amended, or any successor provision or any regulations promulgated pursuant thereto, insofar as the same requires reporting of information in respect of real estate transactions.

7.    FEE TITLE. At the closing of title, Sponsor shall convey to Purchaser fee simple title to the Unit, free and clear of all encumbrances other than those expressly agreed to by Purchaser or set forth in Schedule A annexed hereto and made a part hereof. Any encumbrance to which title is not to be subject shall not be an objection to title if (a) the instrument required to remove it of record is delivered at or prior to the closing of title to the proper party or to Purchaser's title insurance company, together with the attendant recording or filing fee, if any, or (b) Commonwealth Land Title Insurance Company, having an address at Two Grand Central Tower, 140 East 45th Street, 22nd Floor, New York, NY 10017 (Tel: (212) 949-0100, Fax: (212) 983-8430) (or such other title insurance company as Purchaser may utilize), is or would be willing, in a fee policy issued by it to the Purchaser, to insure Purchaser that it will not be

3

collected out of the Unit if it is a lien, or will not be enforced against the Unit if it is not a lien.

8.     <u>CLOSING ADJUSTMENTS AND REAL ESTATE TAXES.</u>

       8.1    Subject to Paragraph 15 hereof, the following adjustments shall be made as of midnight of the day preceding the Closing Date with respect to the Unit:

          (a)    real estate taxes and assessments, if any (including water charges and sewer rents, if separately assessed), on the basis of the period for which assessed;

          (b)    Residential Common Charges for the month in which title closes; and

          (c)    accrued rent and any other charges pursuant to an interim lease or use and occupancy agreement, if any, covering the Unit.

       8.2    If closing of title occurs before the tax rate is fixed, adjustment of taxes shall be based upon the latest tax rate applied to the most recent applicable assessed valuation. Installments for tax assessments due after the delivery of the deed, if any, shall be paid by Purchaser and shall not be considered a defect in title. If a Unit has not been separately assessed as of the Closing Date, the adjustments and collection of taxes under subsection 8.1(a) hereof and future tax payments shall be as described in the Section of the Plan entitled "Closing Costs and Adjustments."

       8.3    If Sponsor obtains a refund for real estate taxes paid (or a credit for such taxes to be paid) on Purchaser's Unit, Purchaser and Sponsor will apportion the refund (as well as the costs and/or fees for obtaining the refund or credit) based on the percentage of time for which the refund or credit is obtained during which each party hereto owned the Unit in question. The provisions of this subsection shall survive the closing of title.

       8.4    The "Customs in Respect of Title Closings" recommended by The Real Estate Board of New York, Inc., as amended to date, shall apply to the adjustments and other matters therein mentioned except as otherwise provided herein.

       8.5    Any errors or omissions in computing apportionments at closing shall be corrected and payment made to the proper party promptly after discovery. The provisions of this subsection shall survive the closing.

      9.     <u>MORTGAGE TAX CREDIT.</u> In the event a mortgage recording tax credit becomes available pursuant to Section 339-ee(2) of the Condominium Act, it is specifically understood that such credit shall inure to the benefit of Sponsor. Accordingly, at closing, a Purchaser who elects mortgage financing will be responsible to pay the full amount (but not in excess thereof) of the mortgage recording tax chargeable on the entire amount being financed. Sponsor at closing will be reimbursed by Purchaser to the extent of any mortgage tax credit allowed. Alternatively, Sponsor may require, in its sole discretion, that a Purchaser, who is financing the purchase of said Residential Unit with a purchase money loan secured by a mortgage (the "Purchase Money Mortgage"), must cause the lender making such loan to accept

4

from the Sponsor an assignment of a portion of any mortgage securing the Property in an amount up to the Purchase Money Mortgage as determined by Sponsor. Upon such assignment, the Purchase Money Mortgage will be exempt from mortgage recording tax under Section 255 of the Real Property Tax Law. Sponsor will be solely entitled to the benefits of any mortgage tax credit which Purchaser receives as a result of such assignment. Accordingly, at the Closing, Purchaser will pay to Sponsor an amount equal to the mortgage recording tax which would have otherwise been due in connection with the recording of the Purchase Money Mortgage.

10.    CLOSING COSTS.    In addition to those costs and adjustments described in Articles 8 and 9 herein, Purchaser shall be required to pay the other closing costs which are Purchaser's responsibility as more particularly described in Part I of the Plan entitled "Closing Costs and Adjustments."

11.    DEPOSIT.    The Deposit made pursuant to this Agreement is subject to the requirements of Section 71-a(3) of the State of New York Lien Law (the provisions of which are set forth in Part II of the Plan and deemed incorporated herein by reference) and Sections 352-e(2-b) and 352-h of the General Business Law of the State of New York. Any Deposit received from Purchaser will be held in accordance with the Subsection entitled "Escrow and Trust Fund Requirements" under the Section entitled "Procedure to Purchase" set forth in Part I of the Plan. By signing this Agreement, Purchaser will not object and will be deemed to have agreed, without the need for a further written agreement, to the release of the Deposit to Sponsor in the event Sponsor and Purchaser close title under this Agreement. Sponsor is required by Law to submit a Form 1099 to the Internal Revenue Service reporting interest earned on Purchaser's Deposit, if any. Purchaser will be taxed accordingly on such interest.

12.    BINDING EFFECT OF DECLARATION, BY-LAWS AND RULES AND REGULATIONS.    Purchaser hereby accepts and approves the Plan (including the Declaration, By-Laws and Rules and Regulations contained therein) and agrees to abide and be bound by the terms and conditions thereof.

13.    AGREEMENT SUBJECT TO MORTGAGE.    No encumbrance shall arise against the Property as a result of this Agreement or any monies deposited hereunder. In furtherance and not in limitation of the provisions of the preceding sentence, the provisions of this Agreement are and shall be subject and subordinate to the lien of any mortgage, including, but not limited to, any construction or building loan mortgage, heretofore or hereafter made any advances heretofore or hereafter made thereon and any payments or expenses made or incurred or which hereafter may be made or incurred, pursuant to the terms thereof, or incidental thereto, or to protect the security thereof, to the full extent thereof, without the execution of any further legal documents by Purchaser. This subordination shall apply in all cases, regardless of the timing of, or cause for, the making of advances of money or the incurring of expenses. Sponsor shall, at its option, either satisfy such mortgages or obtain a release of each Unit and its undivided interest in the Common Elements from the lien of such mortgages on or prior to the Closing Date, unless Purchaser voluntarily assumes such mortgage or consents to the continuation of the lien thereof. The existence of any mortgage or mortgages encumbering the Property, or portions thereof, other than the Unit and its (their) undivided interest in the Common Elements, shall not constitute an objection to title or excuse Purchaser from completing payment of the Purchase Price or performing all of its other obligations hereunder or be the basis of any

5

claim against, or liability of, Sponsor, provided that any such mortgage(s) is subordinated to the Declaration.

14.    PURCHASER'S REPRESENTATIONS. Purchaser represents that Purchaser has full right and authority to execute this Agreement and perform Purchaser's obligations hereunder. If Purchaser is not a natural person, Purchaser agrees to deliver at any time, such documents evidencing Purchaser's authority as may be required by Purchaser's title company or Sponsor. Purchaser acknowledges and agrees that Sponsor may desire to obtain certain information about Purchaser's (or Purchaser's principals) character, general reputation, personal characteristics and mode of living prior to counter-executing this Agreement and in order to permit Sponsor to comply with the requirements of the Fair Credit Reporting Act, Purchaser hereby authorizes Sponsor, if Sponsor elects in its sole discretion, to obtain such information and to retain a credit reporting agency to obtain such information.

15.    DEFAULT BY PURCHASER.

    15.1    The following shall constitute "Events of Default" hereunder:

        (i)    Purchaser's failure to pay the Additional Deposit or the balance of the Purchase Price on the Closing Date designated by Sponsor; or

        (ii)    Purchaser's failure to duly complete and sign before a notary public and deliver at closing the power of attorney or the New York State and City transfer tax returns; or

        (iii)    If Purchaser is or becomes the tenant of record of the Unit, Purchaser's failure to pay rent or to otherwise comply with Purchaser's lease or tenancy obligations; or

        (iv)    If Purchaser is or becomes the tenant of record of the Unit and Purchaser vacates or abandons the Unit; or

        (v)    Purchaser's assignment of any of Purchaser's property for the benefit of creditors, or Purchaser's filing a voluntary petition in bankruptcy; or

        (vi)    If a non-bankruptcy trustee or receiver is appointed over Purchaser or Purchaser's property, or an involuntary petition in bankruptcy is filed against Purchaser; or

        (vii)    If a judgment or tax lien is filed against Purchaser and Purchaser does not pay or bond the same; or

        (viii)    Purchaser's failure to pay any closing costs set forth in this Agreement or the Plan, on the Closing Date designated by Sponsor; or

        (ix)    The failure to pay, perform or observe any of Purchaser's other obligations hereunder.

6

15.2   TIME IS OF THE ESSENCE with regard to Purchaser's obligations to pay the balance of the Purchase Price and to perform Purchaser's other obligations under this Agreement. If Purchaser fails to make such payment when required as herein provided or fails to perform any of Purchaser's other obligations hereunder, Sponsor shall give notice to Purchaser of such default. If such default shall not be cured within thirty (30) days thereafter, Sponsor may, at its option, cancel this Agreement by notice of cancellation to Purchaser. If Sponsor elects to cancel this Agreement, (a) Sponsor may retain all sums deposited by Purchaser hereunder (including any amounts paid by Purchaser for additional work in the Unit), together with interest earned thereon, as liquidated damages (Sponsor's actual damages being difficult or impossible to ascertain) and, upon retaining such sum, this Agreement shall be terminated and neither party hereto shall have any further rights, obligations or liability to or against the other under this Agreement or the Plan and (b) Sponsor may sell the Unit to any third party as though this Agreement had never been made (without any obligation to account to Purchaser for any part of the proceeds of such sale). Notwithstanding the foregoing, if and only to the extent that the sale of the Residential Units is not exempt from the provisions of the Interstate Land Sales Full Disclosure Act, the amount of the Deposit to be retained by Sponsor upon Purchaser's failure to cure a default after the expiration of the thirty (30) day notice and opportunity to cure period will be the greater of (i) fifteen percent (15%) of the Purchase Price (excluding any interest owed) or (ii) the amount of damages incurred by Sponsor due to the default. For purposes hereof, "damages" means actual damages resulting from the default, as determined under New York law.

15.3   If Purchaser fails for any reason to close title to the Unit on the originally scheduled Closing Date (a) the closing apportionments described in Section 8.1 of this Agreement will be made as of midnight of the day preceding the originally scheduled Closing Date, regardless of when the actual closing of title occurs, and (b) Purchaser will be required to pay to Sponsor, as a reimbursement of Sponsor's higher carrying costs for the Unit by virtue of the delay, and in addition to the other payments to be made to Sponsor under this Agreement and the Plan, an amount equal to 0.03% of the Purchase Price for each day starting from (and including) the originally scheduled Closing Date to (and including) the day before the actual Closing Date. If, through no fault of Purchaser, Sponsor postpones the originally scheduled Closing Date, these provisions shall apply to the rescheduled Closing Date if Purchaser fails for any reason to close title to the Unit on the rescheduled Closing Date.

16.   CLOSING CONTINGENT UPON PLAN BEING DECLARED EFFECTIVE.

16.1   The respective obligations of Purchaser and Sponsor hereunder are contingent upon the Plan being declared effective. The Plan shall not be declared effective except in accordance with the prerequisites set forth in the Plan, as same may be amended from time to time. Purchaser understands and agrees that Sponsor shall have the right to abandon the Plan at any time prior to its being declared effective or thereafter in certain limited cases set forth in the Plan (see the Section in the Plan entitled "Effective Date" for full details). Sponsor shall notify Purchaser, in writing or by a duly filed amendment to the Plan, when the Plan becomes effective or is abandoned.

16.2   If the Plan is abandoned or if after being declared effective the Plan will

7

not be consummated for any reason, this Agreement will be deemed canceled and the Deposit paid by Purchaser hereunder, together with interest earned thereon, if any, will be disbursed to Purchaser, subject to Sponsor's rights to retain certain funds deposited by Purchaser for special work in the Unit, as more particularly described in the Section of the Plan, entitled "Effective Date." After the monies are so disbursed, Purchaser and Sponsor will have no claim against each other or the Selling Agent in connection with this Agreement or the Plan, and all of same will be released and discharged from all liabilities and obligations hereunder and under the Plan.

17.    SPONSOR'S INABILITY TO CONVEY THE UNIT.  If Sponsor is unable to deliver title to the Unit to Purchaser in accordance with the provisions of this Agreement and the Plan, Sponsor will not be obligated to bring any action or proceeding or otherwise incur any cost or expense of any nature whatsoever in excess of its obligations set forth in the Plan in order to cure such inability, and, in such case, if Sponsor notifies Purchaser of its refusal to cure such inability and if Purchaser is not in default hereunder, Purchaser's sole remedy will be to either (a) take title to the Unit subject to such inability (without any abatement in, or credit against, the Purchase Price, or any claim or right of action against Sponsor for damages or otherwise) or (b) terminate this Agreement.  If Purchaser so elects to terminate this Agreement, Sponsor will, within thirty (30) days after receipt of notice of termination from Purchaser, return to Purchaser the Deposit paid by Purchaser hereunder, together with interest earned thereon, if any, subject to Sponsor's rights to retain certain funds deposited by Purchaser for special work in the Unit, as more particularly described in the Section of the Plan, entitled "Terms of Sale," and, upon making such payment, this Agreement will be terminated and neither party hereto will have any further rights, obligations or liability to or against the other under this Agreement or the Plan. The foregoing remedy must be exercised by notice of Purchaser in writing to Sponsor within fifteen (15) days after the giving of Sponsor's notice of refusal to cure such inability, failing which it will be conclusively deemed that Purchaser elected the remedy described in clause (a) above (i.e., to acquire title subject to such inability).

18.    FIXTURES, APPLIANCES AND PERSONAL PROPERTY.    Only those fixtures, appliances and items of personal property which are described in the Description of the Property in Part II of the Plan as being part of the Unit are included in the sale of the Unit pursuant to the provisions of this Agreement.  At the Closing, Sponsor shall transfer to Purchaser any assignable warranties and undertakings received by Sponsor which relate to appliances, equipment or fixtures located in the Unit.

19.    ACCEPTANCE OF CONDITION OF PROPERTY.  Purchaser shall accept title (without abatement in, or credit against, the Purchase Price or any provision for escrow deposits at the closing of title) notwithstanding the failure to complete construction of (a) the "punch list" items in the Unit (b)  other Units or (c) the Common Elements of the Property which do not prevent Purchaser's use of the Unit provided that Sponsor delivers a temporary certificate of occupancy for the Unit.  The Unit and the fixtures and personal property contained therein, are being sold and delivered as described in the Plan, at the time of transfer of title to such Unit, unless Sponsor and Purchaser otherwise agree.  Sponsor will maintain each Unit, and the fixtures and personality contained therein, up to the time of the transfer of title to the Unit in question. The Purchaser of a Unit shall have the right to inspect such Unit prior to the Closing Date. However, the failure of Sponsor to complete "punch list" type work shall not be a ground for Purchaser delaying the Closing provided that Sponsor agrees to complete such work promptly

8

after closing. Purchaser will receive at least five (5) business days notice that the Unit is available for inspection and Sponsor reserves the right to postpone and/or reschedule any scheduled inspections of the Unit upon one (1) business day's notice and Sponsor reserves the right to schedule additional inspections as Sponsor deems necessary or appropriate. If Purchaser fails to inspect the Unit within said period(s), Purchaser shall be deemed to have accepted the Unit in good condition and in accordance with the terms of the Plan. Except as expressly provided in this Agreement or the Plan, including but not limited to subparagraph (f) of the subsection entitled "Sponsor's Obligations with Respect to the Building" of the Section entitled "Rights and Obligations of Sponsor," Sponsor shall have no obligation to repair or improve the Unit, any portion of the Property, or the appliances, equipment or fixtures attached to or used in connection with the Unit or the Property. Sponsor is obligated to construct the Building in accordance with all applicable codes and filed building plans and specifications as well as the provisions of the Plan. The Housing Merchant Implied Warranty Law (General Business Law Article 36-B) is not applicable to this offering. Sponsor is not making any express or implied warranties of fitness for a particular purpose, merchantability or habitability. Unless caused by a violation of the Sound Transmission Code or other applicable code, there is no warranty as to sound transmission. Unless caused by a violation of an applicable code with regard to the ventilation system or other applicable code, there is no warranty as to odors. Unless caused by a code violation, there is no warranty with respect to mold, mildew, spores, fungi or other toxins within the Condominium. There is no warranty as to view or light quality. Sponsor has not given and Purchaser has not relied on or bargained for any such warranties. In no event will Sponsor be liable for incidental or consequential damages (whether based on negligence, breach of contract, warranty, or otherwise). In the event of any conflict between the foregoing disclaimers and Sponsor's obligations to construct the Building in accordance with all applicable codes and filed building plans and specifications as well as the provisions of the Plan, Sponsor's obligations to construct the Building in accordance with all applicable codes and filed building plans and specifications as well as the provisions of the Plan will control.

Sponsor will not be obligated to correct, and will not be liable to any Board or Unit Owner as a result of any defects in construction, or in the installation or operation of any mechanical equipment, appliances, other equipment, finishes, materials or fixtures (including kitchen appliances and bathroom fixtures), except as more as specifically set forth in the Section of the Plan entitled "Rights and Obligations of Sponsor."

Notwithstanding the foregoing, Sponsor will be obligated to repair abnormal scratches in plastic laminate, vitreous china, natural stone, wood, porcelain and metallic surfaces by filling or refinishing the same, but Sponsor will not be obligated to replace any such surfaces. The provisions of this Article shall survive the closing of title.

20.    DAMAGE TO THE UNIT. If between the date of this Agreement and the closing of title the Unit is damaged by fire or other casualty, the following shall apply:

20.1    The risk of loss to the Unit by fire or other casualty is assumed by Sponsor until the earlier of closing of title or possession of the Unit by Purchaser, but without any obligation or liability by Sponsor to repair or restore the Unit. If Sponsor elects to repair or restore the Unit, this Agreement shall continue in full force and effect, Purchaser shall not have the right to reject title or receive a credit against, or abatement in, the Purchase Price and

9

Sponsor shall be entitled to a reasonable period of time within which to complete the repair or restoration. Any proceeds received from insurance or in satisfaction of any claim or action in connection with such loss shall, subject to the rights of the respective Boards and other Unit Owners if the Declaration has theretofore been recorded, belong entirely to Sponsor and, if such proceeds are paid to Purchaser, Purchaser shall promptly upon receipt thereof turn them over to Sponsor. The provisions of the preceding sentence shall survive the closing of title.

20.2    In the event Sponsor notifies Purchaser that it does not elect to repair or restore the Unit, or, if the Declaration has been recorded prior thereto and the Unit Owners do not resolve to make such repairs or restoration pursuant to the By-Laws, this Agreement will be deemed canceled and of no further force and effect and Sponsor will return to Purchaser the Deposit paid by Purchaser hereunder, together with interest earned thereon, if any, subject to Sponsor's rights to retain certain funds deposited by Purchaser for special work in the Unit, as more particularly described in the Section of the Plan, entitled "Terms of Sale," and neither party hereto will have any further rights, obligations or liability to or against the other hereunder or under the Plan, except that if Purchaser is then in default hereunder (beyond any applicable grace period), Sponsor will retain all such sums deposited by Purchaser hereunder, together with any interest earned thereon, as and for liquidated damages.

21.    NO REPRESENTATIONS.    Purchaser acknowledges that Purchaser has not relied upon any architect's plans, sales plans, selling brochures, advertisements, representations, warranties, statements or estimates of any nature whatsoever, whether written or oral, made by Sponsor, Selling Agent or otherwise, including, but not limited to, any relating to the description or physical condition of the Property, the Building or the Unit, or the size or the dimensions of the Unit or the rooms therein contained or any other physical characteristics thereof, the services to be provided to Unit Owners, the estimated Residential Common Charges allocable to the Unit, the estimated real estate taxes on the Unit, the right to any income tax deduction for any real estate taxes or mortgage interest paid by Purchaser, the right to any income tax credit with respect to the purchase of the Unit, or any other data, except as herein or in the Plan specifically represented, Purchaser having relied solely on such Purchaser's own judgment and investigation in deciding to enter into this Agreement and purchase the Unit. No person has been authorized to make any representations on behalf of Sponsor except as herein or in the Plan specifically set forth. No oral representations or statements shall be considered a part of this Agreement. Sponsor makes no representation or warranty as to the work, materials, appliances, equipment or fixtures in the Unit, the Common Elements or any other part of the Property other than as set forth herein or in the Plan. The provisions of this Article shall survive the closing of title.

22.    PROHIBITION AGAINST ADVERTISING AND SELLING.    Prior to the closing of title to a Residential Unit, the Agreement prohibits Purchaser from listing the Residential Unit for resale or rental with any broker or from advertising or otherwise offering, promoting or publicizing the availability of the Residential Unit for sale or lease, without Sponsor's prior written consent. In addition, a Purchaser (other than a Purchaser purchasing for such Purchaser's own occupancy) may not advertise, list or sell a Residential Unit acquired from Sponsor for twelve (12) months after acquisition of such Residential Unit (provided however, such limitation shall not apply from and after the date that the Sponsor conveys title to all of the Residential Units). Any such conveyances in violation of the foregoing will be voidable by Sponsor.

10

23.    BROKER. Purchaser represents to Sponsor that Selling Agent and The Corcoran Group (collectively the "Broker") are the only brokers or sales agents with whom Purchaser has dealt in connection with this transaction, and Sponsor agrees to pay the commission earned by the Broker pursuant to a separate agreement. Purchaser agrees that should any claim be made against Sponsor for commissions by any broker, other than the Broker, on account of any acts of Purchaser or Purchaser's representatives, Purchaser will indemnify and hold Sponsor free and harmless from and against any and all liabilities and expenses in connection therewith, including reasonable legal fees. The provisions of this Article 23 shall survive the closing of title.

24.    AGREEMENT MAY NOT BE ASSIGNED. Purchaser does not have the right to assign this Agreement without the prior written consent of Sponsor. If Purchaser is a corporation, partnership, limited liability company, trust or other legal entity, any sale, assignment, transfer, pledge, encumbrance or other disposition of any of the ownership interest of Purchaser (including without limitation, the stock, membership or beneficial interests of the stockholders, partners, members or beneficiaries of Purchaser or its stockholders, partners, members or beneficiaries) shall be considered an assignment of this Agreement and shall be subject to the provisions, prohibitions and terms of this Article concerning assignment of this Agreement. For purposes of this Agreement, it is the intent of the part(ies) that the individuals controlling Purchaser shall be deemed to be ___N/A___. Any purported assignment by Purchaser in violation of this Agreement will constitute a default hereunder and will be voidable by Sponsor. Sponsor's refusal to consent to an assignment will not entitle Purchaser to cancel this Agreement or give rise to any claim for damages against Sponsor. If Sponsor, in its sole discretion, consents to a Purchaser's request for an assignment of this Agreement, or for the addition, deletion or substitution of names on this Agreement, then Purchaser will be required to pay Sponsor's attorneys a fee of $1,000, in advance, for preparation of an assignment agreement.

25.    BINDING EFFECT. This Agreement shall not be binding on Purchaser or Sponsor until a fully executed counterpart hereof has been delivered to Purchaser. If this Agreement is not accepted within thirty (30) days after delivery by Purchaser of an executed Agreement by the delivery to Purchaser of a fully executed counterpart, this Agreement shall be deemed to have been rejected and canceled and the deposit paid on the execution hereof shall be promptly returned to Purchaser.

26.    NOTICES. Any notice, request, letter, consent or other communication hereunder or under the Plan (other than amendments to the Plan which shall be served in accordance with the Plan or documents for which the method of notice and or delivery is otherwise set forth in the Plan) shall be in writing and delivered by regular mail as well as hand delivered or sent, postage prepaid, by registered or certified mail, by facsimile or by Federal Express or other reputable overnight courier, to Purchaser at the address given at the beginning of this Agreement, and to Sponsor at the address given at the beginning of this Agreement, with a copy to Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038, Attn.: Michel Evanusa, Esq. in the same manner as notice is given to Sponsor, or to such other address as either party may hereafter designate to the other in writing. Except as otherwise expressly provided herein, the date of hand delivery or mailing shall be deemed to be the date of the giving of notice, except that the date of actual receipt shall be deemed to be the date of the giving of any notice of change of address. Any notice either of the parties hereto receives from the other party's attorneys shall be deemed to be notice from such party itself (including, without limitation, any notices of

11

closing or default which Sponsor's counsel is hereby expressly designated and empowered to issue). A failure by Purchaser to acknowledge receipt of any notice, request, letter, consent or other communication hereunder shall not in anyway invalidate such communication. Notwithstanding anything to the contrary, notices regarding closing costs or ministerial matters, the rescheduling of Closing Dates or the scheduling or rescheduling of inspections may be made by facsimile to each party's attorneys.

  27. JOINT PURCHASERS. The term "Purchaser" shall be read as "Purchasers" if more than one person are purchasers, in which case their obligations shall be joint and several.

  28. PERFORMANCE BY AND LIABILITY OF SPONSOR. Purchaser's acceptance of the deed for the Unit shall be deemed to be a full performance and discharge of each and every agreement and obligation on the part of Sponsor to be performed pursuant to the provisions of this Agreement, the Plan, 13 NYCRR, Part 20 (the regulations of the Attorney General of the State of New York governing the acceptance for filing of the Plan) and General Business Law §352-e, except those (if any) herein or therein expressly stated to survive delivery of such deed.

  29. FURTHER ASSURANCES. Either party shall execute, acknowledge and deliver to the other party such instruments, and take such other actions, in addition to the instruments and actions specifically provided for herein, as such other party may reasonably request in order to effectuate the provisions of this Agreement or of any transaction contemplated herein or to confirm or perfect any right to be created or transferred hereunder or pursuant to any such transaction. The provisions of this Article shall survive the closing of title.

  30. AGREEMENT NOT CONTINGENT UPON FINANCING. The terms and provisions of this Agreement and Purchaser's obligations hereunder are not contingent upon Purchaser securing financing of the Purchase Price (or any portion thereof) stated in Section 4 of this Agreement, and Purchaser understands and agrees that Purchaser's failure to obtain such financing will not relieve Purchaser of Purchaser's obligations hereunder. Purchaser further understands and agrees that if Purchaser chooses to finance Purchaser's purchase of the Unit through a lending institution and obtain a commitment therefrom, neither a subsequent change in the terms of such commitment, the expiration or other termination of such commitment, nor any change in Purchaser's financial status or condition shall release or relieve Purchaser of Purchaser's obligations pursuant to this Agreement.

  31. COSTS OF ENFORCING AND DEFENDING AGREEMENT. Purchaser shall be obligated to reimburse Sponsor for any legal fees and disbursements incurred by Sponsor in defending Sponsor's rights under this Agreement or, in the event Purchaser defaults under this Agreement beyond any applicable grace period, in canceling this Agreement or otherwise enforcing Purchaser's obligations hereunder.

  32. SEVERABILITY. If any provision of this Agreement or the Plan is invalid or unenforceable as against any person or under certain circumstances, the remainder of this Agreement or the Plan and the applicability of such provision to other persons or circumstances shall not be affected thereby. Each provision of this Agreement or the Plan, except as otherwise herein or therein provided, shall be valid and enforced to the fullest extent permitted by Law.

12

33.    STRICT COMPLIANCE.  Any failure by Sponsor to insist upon the strict performance by Purchaser of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions hereof, and Sponsor, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by Purchaser of any and all of the provisions of this Agreement to be performed by Purchaser.

34.    GOVERNING LAW.  The provisions of this Agreement shall be governed by and construed in accordance with the Laws of the State of New York applicable to agreements made and to be performed wholly in the State of New York, without regard to principles of conflicts of Law.

35.    WAIVER OF JURY.  EXCEPT AS PROHIBITED BY LAW, THE PARTIES SHALL, AND THEY HEREBY DO, EXPRESSLY WAIVE TRIAL BY JURY IN ANY LITIGATION ARISING OUT OF, OR CONNECTED WITH, OR RELATING TO, THE PLAN THIS AGREEMENT OR THE RELATIONSHIP CREATED HEREBY. THE PROVISIONS OF THIS ARTICLE SHALL SURVIVE THE CLOSING OF TITLE.

36.    ENTIRE AGREEMENT.  This Agreement together with the Plan constitutes the entire agreement between the parties and supersedes any and all understandings and agreements between the parties with respect to the subject matter hereof.

37.    CERTAIN REFERENCES.  A reference in this Agreement to any one gender, masculine, feminine or neuter, includes the other two, and the singular includes the plural, and vice versa, unless the context otherwise requires.  The terms "herein," "hereof" or "hereunder" or similar terms used in this Agreement refer to this entire Agreement and not to the particular provision in which the term is used, unless the context otherwise requires.  Unless otherwise stated, all references herein to Articles, Sections, subsections or other provisions are references to Articles, Sections, subsections or other provisions of this Agreement.

38.    CAPTIONS.  The captions in this Agreement are for convenience of reference only and in no way define, limit or describe the scope of this Agreement or the intent of any provision hereof.

39.    RULE OF CONSTRUCTION.  There shall be no presumption against the draftsman of this Agreement or the Plan.

40.    SUCCESSORS AND ASSIGNS.  The provisions of this Agreement shall bind and inure to the benefit of Purchaser and Purchaser's heirs, legal representatives, successors and permitted assigns and shall bind and inure to the benefit of Sponsor and its successors and assigns.

41.    NO ORAL CHANGES.  This Agreement cannot be changed or terminated and no provision waived orally.  ANY CHANGES OR ADDITIONAL PROVISIONS MUST BE SET FORTH IN A RIDER ATTACHED HERETO OR IN A SEPARATE WRITTEN AGREEMENT SIGNED BY THE PARTIES HERETO OR BY AN AMENDMENT TO THE PLAN.

13

42.     COUNTERPART SIGNATURES.  This Agreement may be executed in any number of counterparts, any one of which shall constitute an original of this Agreement.  When counterparts have been executed by all parties, they shall have the same effect as if the signatures to each counterpart were upon the same documents and shall be deemed valid as originals.  The parties agree that all such signatures may be transferred to a single document upon the request of any party.  This Agreement shall not be binding unless and until it shall be fully executed and delivered by all parties hereto.

43.     **INTERSTATE LAND SALES.**  **THE FOLLOWING PROVISION IS DEEMED INCORPORATED ONLY SO LONG AS THE PROPERTY IS NOT EXEMPT FROM THE PROVISIONS OF THE INTERSTATE LAND SALES FULL DISCLOSURE ACT 15 USC §§ 1701 ET SEQ.**

**YOU HAVE THE OPTION TO CANCEL YOUR CONTRACT OR AGREEMENT OF SALE BY NOTICE TO THE SPONSOR UNTIL MIDNIGHT OF THE SEVENTH DAY FOLLOWING THE SIGNING OF THE CONTRACT OR AGREEMENT.**

**IF YOU DID NOT RECEIVE A PROPERTY REPORT PREPARED PURSUANT TO THE REGULATIONS OF THE OFFICE OF INTERSTATE LAND SALES REGULATION, U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, IN ADVANCE OF YOUR SIGNING THE CONTRACT OR AGREEMENT, THE CONTRACT OR AGREEMENT MAY BE CANCELED AT YOUR OPTION FOR TWO YEARS FROM THE DATE OF SIGNING.**

44.     OPTION.  The parties to this Agreement acknowledge that, for federal income tax purposes only, this Agreement shall be deemed an option.

14

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date below.

Date:    _3\16\07_____
(To be inserted after execution by Sponsor)

SPONSOR:

CRP/EXTELL PARCEL I, L.P.
By:  CRP/Extell Parcel I GP, L.L.C,
      its general partner

By:    _____
       Name:  Donna Gargano
       Title:    Authorized Signatory

PURCHASER:

_Philip Pol_
Philip Politziner

(Social Security or Federal I.D. Number): _____

Telephone No.: _____

_Glennis Pol_
Glennis Politziner

(Social Security or Federal I.D. Number): _____

Telephone No.: _

15

SCHEDULE A
PERMITTED ENCUMBRANCES

1. Building restrictions and zoning and other regulations, resolutions and ordinances and any amendments thereto now or hereafter adopted.

2. Any state of facts which an accurate survey of the Property would show, provided such state of facts would not make title to the Unit uninsurable, except as otherwise permitted herein.

3. The terms, burdens, covenants, restrictions, conditions, easements and rules and regulations, all as set forth in the Declaration, the By-Laws and the Rules and Regulations, the Power of Attorney from the Purchaser to the Residential Board, and the Floor Plans; as all of the same may be amended from time to time.

4. Consents by the Sponsor or any former owner of the Land for the erection of any structure or structures on, under or above any street or streets on which the Property may abut.

5. Any easement or right of use in favor of any utility company for construction, use, Maintenance or repair of utility lines, wires, terminal boxes, mains, pipes, cables, conduits, poles and other equipment and facilities on, under and across the Property.

6. Revocability of licenses for vault space, if any, under the sidewalks and streets.

7. Encroachments of stoops, areas, cellar steps or doors, trim, copings, retaining walls, bay windows, balconies, sidewalk elevators, fences, fire escapes, cornices, foundations, footings and similar projections, if any, on, over, or under the Property or the streets or sidewalks abutting the Property, and the rights of governmental authorities to require the removal of any such projections and variations between record lines of the Property and retaining walls and the like, if any.

8. Leases and service, Maintenance, employment, concessionaire and license agreements, if any, of other Units or portions of the Common Elements.

9. The lien of any unpaid Common Charge, real estate tax, water charge or sewer rent, or vault charge, provided the same are adjusted at the closing of title.

10. The lien of any unpaid assessment payable in installments (other than assessments levied by the Residential Board), except that the Sponsor shall pay all such assessments due prior to the Closing Date (with the then current installment to be apportioned as of the Closing Date) and the Purchaser shall pay all assessments due from and after the Closing Date.

11. Any declaration or other instrument affecting the Property which the Sponsor deems necessary or appropriate to comply with any Law or requirement of the Department of Buildings, the City Planning Commission, the Board of Standards and Appeals, or any other public authority, applicable to the demolition, construction, alteration, repair or restoration of the Building.

16

SSL-DOCS1 1717251v1

12. Any encumbrance as to which Commonwealth Land Title Insurance Company (or such other New York Board of Title Underwriters member title insurance company which insures the Purchaser's title to the Unit) would be willing, in a fee policy issued by it to the Purchaser, to insure the Purchaser that such encumbrance (1) will not be collected out of the Unit if it is a lien or (2) will not be enforced against the Unit if it is not a lien.

13. Any other encumbrance, covenant, easement, agreement, or restriction against the Property other than a mortgage or other lien for the payment of money, which does not prevent the use of the Residential Unit for residential purposes.

14. Any lease covering the Unit made from the Sponsor to the Purchaser.

15. Any violation against the Property (other than the Unit) which is the obligation of the Residential Board, Commercial Board, Condominium Board, or another Unit Owner to correct.

16. Any title exceptions noted in the Specimen Title Policy set forth in Part II of the Plan.

SSL-DOCS1 1717251v1

## STORAGE BIN RIDER TO AGREEMENT

Re:    Unit 11B
       Philip Politziner and Glennis Politziner ("Purchaser")
       Storage Bin No. 63
       Rushmore
       80 Riverside Boulevard
       New York, New York 10069

   THIS RIDER TO AGREEMENT made as of the 16 day of March, 2007 by and
between CRP/Extell Parcel I, L.P., a Delaware limited partnership, having an office at c/o Extell
Development Company, 800 Third Avenue, Fourth Floor, New York, New York 10022 ("Sponsor")
and Philip Politziner and Glennis Politziner, having an address at                    , North
Brunswick, NJ 08902 ("Purchaser").

### W I T N E S S E T H:

   1.  This Rider (the "Rider") amends and modifies that certain Agreement (the
"Agreement") by and between CRP/Extell Parcel I, L.P. ("Sponsor") and Purchaser with respect to the
above referenced Unit in the condominium known as the Rushmore located at 80 Riverside Boulevard,
New York, New York. In case of any inconsistencies between any of the terms and conditions of the
Agreement, including any handwritten modifications thereto, and the terms and conditions of this
Rider, the terms and conditions of this Rider shall prevail. All of the paragraphs and provisions
contained in this Rider are incorporated into the Agreement and made a part thereof with the same
force and effect as if therein originally contained.

   2.  (a)  Upon and subject to the terms and conditions set forth in this Rider, Sponsor
agrees to sell and grant, and Purchaser agrees to purchase a license to use a storage bin designated as
Storage Bin **63** (the "Storage Bin") simultaneously with the closing of title to the Unit. The license to
use the Storage Bin (the "Storage Bin License") shall be substantially in the form set forth in Part II of
the Condominium Offering Plan. The Purchase Price for the Storage Bin License is **$0.00** ("Storage
Bin Price") which is separate from and in addition to the Purchase Price for the Unit. The Storage Bin
Price shall be paid at the closing of title to the Unit by Purchaser delivering a good certified check of
Purchaser or official bank check payable to Sponsor or such other party as Sponsor may designate
upon not less than two (2) days notice. Purchaser shall be responsible for the payment of transfer and
other taxes, if any, that are associated with the Storage Bin License.

     (b)  A default by Purchaser under this Rider shall constitute a default under the
Agreement for the Unit and that any other default by Purchaser under the Agreement for the Unit shall
constitute a default under this Rider entitling Sponsor to those remedies as more fully described in the
Agreement and the Plan.

     (c)  Purchaser acknowledges and agrees that the Storage Bin may not be ready for
use and/or occupancy at the time of the closing of title to the Unit and that notwithstanding such event,
Purchaser shall remain obligated to close title to the Unit and purchase the Storage Bin License. In
such event the Storage Bin Price shall be paid to Escrow Agent and Storage Bin License shall be
executed at Closing and the Storage Bin Price and Storage Bin License shall be held in escrow by the

Escrow Agent. Upon notification from Sponsor that the Storage Bin is available for use, Escrow Agent shall release the Storage Bin Price to Sponsor with interest earned thereon, if any, and shall deliver Storage Bin License to Purchaser.

3.    The captions in this Rider and the Agreement are for convenience of reference only and in no way define, limit or describe the scope of this Rider or the Agreement or the intent of any provision hereof.

IN WITNESS WHEREOF, the parties have executed this Rider as of the date written hereinbelow.

DATE: ___3|16|07___

(To be inserted by Sponsor after countersignature by Sponsor)

SPONSOR

CRP/EXTELL PARCEL I, L.P.
By: CRP/Extell Parcel I GP, L.L.C,
    its general partner

By: _____
    Name: Donna Gargano
    Title:   Authorized Signatory

PURCHASER:

_____
Philip Politziner

_____
Glennis Politziner

SSL-DOCS1 1717256v1

## RIDER TO AGREEMENT

Re:     Unit No. 11B ("Unit")
        Purchaser: Glennis Politziner and Philip Politziner ("Purchaser")
        Rushmore
        80 Riverside Boulevard
        New York, New York 10069

        This Rider (the "Rider") amends and modifies that certain Agreement (the "Agreement")
by and between CRP/EXTELL Parcel I, L.P. ("Sponsor") and Purchaser with respect to the
above referenced Unit in the condominium known as Rushmore located at 80 Riverside
Boulevard, New York, New York 10069.  In case of any inconsistencies between any of the
terms and conditions of the Agreement, including any handwritten modifications thereto, and the
terms and conditions of this Rider, the terms and conditions of this Rider shall prevail.  All of the
paragraphs and provisions contained in this Rider are incorporated into the Agreement and made
a part thereof with the same force and effect as if therein originally contained.

A.  THE PLAN.  A new last sentence is added to Paragraph 1 of the Agreement as follows:

    Notwithstanding anything to the contrary contained herein, in the event of any
    inconsistency between the provisions of the Agreement and this Rider and the Plan which
    arise from changes to the Agreement negotiated between Sponsor and Purchaser, the
    provisions of the Agreement and this Rider shall govern and be binding.

B.  PURCHASE PRICE.  The last sentence of Paragraph 4.2 of the Agreement is deleted
    entirely and the following language is substituted in its place:

    If any check is returned for insufficient funds or any other reason, Sponsor shall notify
    Purchaser in writing and following delivery of notice by Sponsor, Purchaser shall have
    three (3) calendar days to replace said check with a certified check or bank check.  If
    Purchaser fails to make the payment as provided for in this Paragraph 4.2, Sponsor at its
    option, may declare this Agreement void ab initio and of no further force and effect and
    may institute an action against Purchaser for the collection of the Deposit as liquidated
    damages or may declare a default by Purchaser under this Agreement which shall entitle
    Sponsor to exercise any of the remedies set forth in Article 15 hereof.

C.  CLOSING OF TITLE.  The second to last sentence of Paragraph 5.1 of the Agreement is
    amended to increase the notice period by deleting the words "two (2) business days" and

1

SSL-DOCS1 1779295v1

to adding in its place "five (5) calendar days." Paragraph 5.1 is further amended by the addition of the following language at the end of the last sentence:

Notwithstanding the foregoing, Purchaser will be entitled to one (1) adjournment of the closing for a period not to exceed fourteen (14) calendar days, without incurring penalties as provided for in Paragraph 15.3 of the Agreement, provided that Sponsor is notified of such adjournment within five (5) calendar days of the date of which Purchaser's attorney receives the closing notice by facsimile copy thereof.

D. PURCHASE PRICE. Paragraph 10 of the Agreement is amended to add the following new subparagraph:

Provided that Purchaser is not otherwise in default under the Agreement, Sponsor agrees that, at the closing, Sponsor shall be responsible for the payment of $35,500.00, equal to one (1.00%) percent of the Purchase Price, to be applied toward the Purchaser's closing costs which are more particularly described in Part I of the Plan entitled "Closing Costs and Adjustments".

E. DEFAULT BY PURCHASER. Provided that Purchaser has the right to adjourn the Closing Date in accordance with Paragraph C of this Rider, Paragraph 15.3 of the Agreement is deleted in its entirety and replaced with the following:

If Purchaser fails for any reason to close title to the Unit on or before the date which is fourteen (14) calendar days from the originally scheduled Closing Date designated by Sponsor (such Closing Date hereinafter referred to as the "Adjustment Date") (a) the closing apportionments described in Section 8.1 of this Agreement will be made as of midnight of the day preceding the Adjustment Date, regardless of when the actual closing of title occurs, and (b) Purchaser will be required to pay to Sponsor, as a reimbursement of Sponsor's higher carrying costs for the Unit by virtue of the delay, and in addition to the other payments to be made to Sponsor under this Agreement and the Plan, an amount equal to 0.03% of the Purchase Price for each day starting from (and including) the Adjustment Date to (and including) the day before the date the actual closing of title occurs. If, through no fault of Purchaser, Sponsor postpones the closing until a date which is after the Adjustment Date, these provisions will apply to such rescheduled Closing Date if Purchaser fails for any reason to close title to the Unit on the rescheduled Closing Date.

F. ACCEPTANCE OF CONDITION OF PROPERTY. Paragraph 19 of the Agreement is amended to add as the second sentence the following:

2

Purchaser shall not be obligated to close title to the Unit unless the Unit is substantially complete with all building systems for the Unit functioning and a temporary certificate of occupancy shall have been issued for the Unit.

G. ACCEPTANCE OF CONDITION OF PROPERTY. Paragraph 19 of the Agreement is amended to add a new subparagraph following the last sentence:

Notwithstanding the foregoing, Sponsor represents that all of the appliances and all of the plumbing, heating and electrical systems servicing the Unit shall be in working order on the Closing Date.

H. BROKER. Paragraph 23 of the Agreement is modified to delete the paragraph entirely and to replace it with the following paragraph:

Purchaser represents to Sponsor that Selling Agent and The Corcoran Group (collectively, the "Broker") is the only broker or sales agent with whom Purchaser has dealt in connection with this sales transaction. Purchaser agrees that should any claim be made against Sponsor for commissions by any broker, other than the aforementioned Broker, on account of any acts of Purchaser or Purchaser's representatives, Purchaser will indemnify and hold Sponsor free and harmless from and against any and all liabilities and expenses in connection therewith, including reasonable legal fees. Sponsor represents to Purchaser that the Broker is the only broker or sales agent with whom Sponsor has dealt in connection with this transaction, and Sponsor agrees to pay the commission earned by the Broker and pursuant to a separate agreement. Sponsor agrees that should any claim be made against Purchaser for commissions by any broker, other than the Broker, on account of any acts of Sponsor or Sponsor's representatives, Sponsor will indemnify and hold Purchaser free and harmless from and against any and all liabilities and expenses in connection therewith, including reasonable legal fees. The provisions of this Article 23 shall survive the closing of title.

I. NOTICES. The first sentence of Paragraph 26 of the Agreement is amended to add the words "with copy to the Purchaser's Attorney, having the address of Federman & Steifman, 370 Lexington Avenue, 24th Floor, New York, New York 10017, attention Seth Steifman, Esq. by hand, overnight courier, or by facsimile" immediately following the word "Agreement," on the third line of the sentence.

J. COSTS OF ENFORCING AND DEFENDING AGREEMENT. Paragraph 31 of the Agreement is deleted entirely and inserted in its place are the words "Intentionally Omitted."

3

The captions in this Rider and the Agreement are for convenience of reference only and in no way define, limit or describe the scope of this Rider or the Agreement or the intent of any provision hereof.

[Signature Page Follows]

4

IN WITNESS WHEREOF, the parties have executed this Rider as of the date written hereinbelow.

DATE: _3/16/07_____

(To be inserted by Sponsor after countersignature by Sponsor)

SPONSOR:

CRP/EXTELL Parcel I, L.P.
By:  CRP/Extell Parcel I GP, L.L.C.,
its general partner

By: _____
    Name:  Donna Gargano
    Title:   Authorized Signatory

PURCHASER:

_____
Glennis Politziner

_____
Philip Politziner

5